IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

NELSON V. NELSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MATTHEW R. NELSON, APPELLEE,
V.
JAMIE R. NELSON, NOW KNOWN AS JAMIE R. RUSSELL, APPELLANT.

Filed April 16, 2013.    No. A-12-161.

Appeal from the District Court for Cheyenne County: DEREK C. WEIMER, Judge. Affirmed.

Jamie R. Russell, pro se.

Donald J.B. Miller, of Miller Law Office, for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

This case presents one primary issue: whether the trial court committed plain error in denying the petition to modify custody and child support filed by Jamie R. Nelson, now known as Jamie R. Russell. Jamie did not assign or argue errors in her brief; rather, she provided a narrative of why she believed the trial court's order was wrong. After reviewing the record, we find no plain error and affirm.

## BACKGROUND

Matthew R. Nelson (Matt) and Jamie divorced in 2002. Matt and Jamie had two children from their marriage, Noah Nelson and M'Kenna Nelson. At the time of the divorce, Jamie had full custody of her daughter who was born of a previous relationship. Matt had other children from a prior marriage, but did not have primary physical custody of them. Following trial, the court awarded Matt physical custody of Noah and M'Kenna subject to Jamie's parenting time. Jamie sought to modify custody in 2003 without success. Jamie subsequently remarried for a

brief time, and a son was born of this marriage. Noah, M'Kenna, and Jamie's other two children spent substantial time together growing up and have close relationships.

In August 2011, Jamie filed a motion to modify custody and child support and asked the court for permission to leave Nebraska with Noah and M'Kenna. She asserted that Matt's custody was injurious to the children's physical, emotional, and mental health and well-being. In support of this claim, Jamie alleged that Matt had relapsed into alcoholism. She also alleged that the children now are at an age to have an opinion and want to live with her. She further stated M'Kenna has a broken right arm and is uncomfortable with Matt helping her dress. In addition to custody, Jamie requested permission to move the children to North Carolina because she found employment there that would offer a starting salary of $6,928 per month compared to her current salary of $1,333.

Matt opposed Jamie's motion to modify custody because modifying custody was not in the best interests of the children.

The case was tried in December 2011. During the 3-day trial, both parties testified, as well as the children, several law enforcement officers, witnesses from the community, and witnesses from the children's schools.

Noah testified that he is 13 years old; is in seventh grade; and has a sister, M'Kenna, who currently lives with Matt. Noah stated that he is fairly close with M'Kenna and Jamie's other two children. Although he has never been to North Carolina, he wants to move there because he would be attending a bigger school that he believed would probably have a better football program. He stated that both of his parents make him do his chores and his homework. He earns mostly A's and B's in school and has good attendance. Noah's report card confirms his testimony.

Noah said that Matt's residence has three bedrooms, one bathroom, a kitchen and a living room, but Noah volunteered that it was "pretty dirty." He noted that the desk by the door "has more papers than you can imagine" and that the couch next to the table has baskets and clothes all over it. He explained that his room was "terrible" and that M'Kenna's room was "pretty messy" as well. The clutter at Matt's house was evidenced by pictures Jamie surreptitiously took after the children let her into Matt's house while Matt was away.

In Noah's opinion, the downside of living with Matt is that Matt is angry when he comes home from work. He testified that Matt once threw a plastic cereal bowl. On another occasion, when Noah was in fourth grade, he and Matt disagreed about the shirt Noah was wearing, and Matt ripped the shirt off of Noah's back and kicked him. Matt denied kicking Noah and explained that Noah refused to change into a more formal shirt for the school Christmas concert. As a result, Matt tried to remove Noah's shirt and, in the process, some buttons may have popped off. Jamie filed a complaint of child abuse as a result of the incident. A deputy responded to the complaint, but no criminal charges were filed.

According to Noah, Jamie used to live in an apartment but was evicted for failure to pay rent. The children now visit her at a hotel in Potter, Nebraska. Jamie explained that some of her friends were providing her with the hotel room at a reduced rate. Noah also expressed familiarity with several of Jamie's ex-boyfriends.

M'Kenna testified that she is 11 years old and in fifth grade. She says she does pretty well in school, except in math. M'Kenna's report card confirms her statements. She explained

that she was going to play volleyball, but broke her wrist during the summer. M'Kenna is also involved in 4-H when she is with Matt and has shown steers and rabbits and has competed in the horse category. Through 4-H, M'Kenna saved enough money to buy her own horse.

M'Kenna said she would like to move to North Carolina because Jamie showed her pictures of the apartment complex she would move to and it had a pool and an exercise room, which seemed nice. M'Kenna said she could also begin playing volleyball earlier in North Carolina.

M'Kenna testified that when she gets in trouble at Matt's, he yells at her, but Jamie does not. She also stated that she got really upset with Matt because he made a sarcastic remark about her injured wrist when he came to the hospital. Several witnesses discussed an incident in which M'Kenna refused to get off the bus at Matt's because she wanted to go to Jamie's. Matt had to get on the bus to attempt to reason with her. She finally exited the bus after Matt picked up her backpack and walked off the bus with it. As M'Kenna started walking away, Matt grabbed her arm to stop her. Noah testified that as a result of this incident, M'Kenna had a small bruise on her arm. A deputy testified that he investigated the incident and found no child abuse. He said there were no marks on M'Kenna and that the situation amounted to M'Kenna's disobeying her father, Matt.

Jamie testified that she has four children who have three different biological fathers. She stated that she is employed with Lexicon as a health care specialist for seniors. She explained that she wants to move to North Carolina to pursue a management position that Lexicon has offered to her.

Jamie testified substantially about a number of volatile relationships in which she was involved. Results from these relationships included her resignation from a job, contact with law enforcement, and a lawsuit. Jamie's daughter, who was born of a previous relationship, described an incident in which the sheriff escorted her and Jamie from the house where they were living with one of Jamie's boyfriends. After that happened, they moved into the home of Jamie's ex-husband.

Jamie's career history included jobs at two insurance companies, a series of restaurants, the Colorado Department of Corrections, and most recently, Lexicon. All of these employers, with the exception of the restaurants and Lexicon, either fired Jamie or encouraged her to resign. Jamie has simultaneously maintained a modeling career, which has required her to travel nationally and has, at times, taken her away from her children. The record does not confirm if Jamie received any financial compensation for her modeling.

Jamie testified that her monthly income would be $6,900 once she moved to North Carolina. Her current salary is $1,333. Jamie also submitted tax returns for 2008 and 2009 showing substantially different salaries from her job with an insurance company. Generally, these returns showed incomes greater than her current salary and less than her projected income in North Carolina.

Jamie testified about her relationship with her children. She said that she and M'Kenna like to paint fingernails and that she curls M'Kenna's hair. She said she has a very special relationship with Noah because he has always been a really solid male figure in her life and he has been her protector. Jamie testified that she researched schools for the children in North Carolina and that the children could fly back once a month to see their fathers.

Jamie admitted that the court found her in contempt for providing false testimony and false discovery responses in a lawsuit filed against her by a prior fiance for return of an engagement ring.

Matt, on the other hand, testified that no female adults or girlfriends have lived at the home with him and the children. He explained that his approach to raising children is old fashioned. He does not have the Internet at his home and admitted that the children did not find his home as fun as they found Jamie's. He described several activities in which the children are involved, including the 4-H program.

Matt explained that, although he knows the children do not want to live with him, he thought it was better for them to live with him because he is very consistent. He said he has had the same job, lived in the same place, gone to the same church, and been connected to the same community for the past 10 years. He explained that the children's lives and family are in Nebraska.

In addition to the parties and the children, several other witnesses testified about their observations of Matt's and Jamie's relationships with Noah and M'Kenna.

Jamie's daughter, who was born of a previous relationship, testified that she is 15 years old and a sophomore in high school. She currently lives with Jamie, and they have a very close relationship. She denied the suggestion that Jamie told Noah and M'Kenna what to say to the judge, but admitted that Jamie told them they needed to speak up if they wanted to live with her. One of Jamie's friends likewise testified that she thought Jamie was a "great mom" who loved her children. Jamie's ex-husband, the father of her youngest son, testified that Jamie frequently called the police on Matt and that he does not trust anything Jamie says. Jamie's ex-husband and Jamie were currently embroiled in a lawsuit at the time of trial.

Matt called several witnesses to testify as to his relationship with the children, including clients, colleagues, and friends. All of them consistently testified that Matt has a loving and affectionate relationship with the children and that they have never seen Matt angry.

Matt's daughter from a prior marriage testified that she is in college and has a wonderful relationship with Matt. She opined that Noah and M'Kenna have a loving and respectful relationship with Matt as well. She said that she has seen Matt angry, but that he does not yell or act aggressively. She could just tell he was angry because he was physically stressed.

In January 2012, the trial court denied Jamie's motion to modify custody and child support. In a detailed order, the trial court found that Jamie did not meet her burden of proving a change in custody to be in the children's best interests and that the court could not modify child support because it could not make any specific finding regarding Jamie's income.

The court stated that although Noah and M'Kenna asked to live with Jamie, they did not have compelling reasons. Instead, the children said they had more fun with Jamie. The court discussed Jamie's choice to expose the children to many different men and her changes in employment and housing. The trial court also found her to be wholly lacking in credibility. In contrast to its opinion of Jamie, the trial court found that Matt "exhibited no guile" and that his life was the "essence of stability."

The trial court could not make any specific finding regarding Jamie's income because her income had been unstable, and she testified that she was about to embark on a career that would pay substantially more. For this reason, the trial court found that Jamie did not meet her burden

of proving a changed income for purposes of modifying child support. This timely appeal followed.

## ASSIGNMENTS OF ERROR

Jamie failed to assign errors in her brief.

## ANALYSIS

Neb. Rev. Stat. § 25-1919 (Reissue 2008) states in part: "The brief of appellant shall set out particularly each error asserted and intended to be urged for the reversal, vacation, or modification of the judgment, decree, or final order alleged to be erroneous." An appellate court will not address errors that are not assigned and argued in the appellant's brief, but it may review the record for plain error. See, *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012); *Okuda v. Hampton*, 154 Neb. 886, 50 N.W.2d 108 (1951). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Connelly, supra*.

Because Jamie did not assign and argue errors, we review the record for plain error.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Tremain v. Tremain*, 264 Neb. 328, 646 N.W.2d 661 (2002). Because this case involves a determination concerning custody of the parties' two children and, as such, necessarily involves a determination of the children's best interests, we have thoroughly and completely reviewed the record for plain error and have found none. Our review of the record reveals that although Matt has a conservative method of child-rearing, there is nothing in the record to prove he is unfit or that the best interests of the children require a modification. The record does not support Jamie's allegations of child abuse, and it indicates that M'Kenna and Noah are safe and involved in their schools and community in Matt's care. Therefore, we find no error in the court's refusal to modify custody.

The record is insufficient for us to address Jamie's concern that the trial court erred in calculating child support because she did not provide any documentation or statement as to what her child support obligations are or the basis upon which child support is calculated. We therefore affirm the trial court's refusal to modify child support.

## CONCLUSION

Having reviewed the record for plain error and finding none, we affirm the decision of the trial court.

AFFIRMED.